NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**DAVID BRADBURY,**
*Petitioner*

**v.**

**DEPARTMENT OF HOMELAND SECURITY,**
*Respondent*

---

2024-2315

---

Petition for review of the Merit Systems Protection Board in No. DA-0752-23-0012-I-1.

---

Decided:  June 6, 2025

---

DAVID BRADBURY, Edmond, OK, pro se.

WILLIAM KANELLIS, Civil Division, Commercial Litigation Branch, United States Department of Justice, Washington, DC, for respondent.  Also represented by WILLIAM JAMES GRIMALDI, PATRICIA M. MCCARTHY, BRETT SHUMATE.

---

PER CURIAM.

David Bradbury petitions for review of a final order by the Merit Systems Protection Board ("Board") that sustained his removal from the Department of Homeland Security ("Agency"). *Bradbury v. Dep't of Homeland Sec.*, No. DA-0752-23-0012-I-1, 2024 MSPB LEXIS 4022 (M.S.P.B. July 12, 2024) ("*Final Order*"). For the following reasons, we affirm.

## BACKGROUND

Mr. Bradbury was employed as a Criminal Investigator with U.S. Immigration and Customs Enforcement in Oklahoma City, Oklahoma from February 23, 2009, until his removal effective September 27, 2022. S.A. 34.[1] On June 14, 2021, the Agency issued Mr. Bradbury a letter of counseling for unprofessional conduct. S.A. 39–42. The Agency ultimately removed Mr. Bradbury for the charge of "Conduct Unbecoming a Law Enforcement Officer" stemming from his response to an investigation into his professional conduct by the Agency's Office of Professional Responsibility ("OPR"). S.A. 34–37. OPR initiated this investigation based on an email sent to OPR by Mr. Bradbury's Group Supervisor, Ryan Browning, on September 17, 2021. S.A. 35. Mr. Browning reported that Mr. Bradbury allegedly conducted online undercover work to investigate child-exploitation without approval. S.A. 61. In a memorandum dated October 19, 2021, the Agency temporarily suspended Mr. Bradbury's authorization to carry firearms and assigned him to administrative duty teleworking from home. S.A. 46–47.

On October 20, 2021, Mr. Bradbury met with three Agency supervisors who notified him he was being placed on administrative duty, assigned to telework, and made to surrender his firearm, badge, and credentials. S.A. 36.

---

[1] "S.A." refers to the supplemental appendix included with the government's informal brief.

Mr. Bradbury's conduct during that meeting became the basis of Specification 1 of the Agency's removal decision. S.A. 29. Specification 1 alleges that Mr. Bradbury became visibly upset when advised how he would be relieved of his firearm, quickly stood up and reached toward his waist, removed his holstered firearm and threw it on the table, causing the individuals in the room to fear for their safety. S.A. 29. Specification 1 also alleges that when leaving the meeting, Mr. Bradbury pointed to Mr. Browning and stated "you're a scum bag," or words to that effect, and stated to Assistant Special Agent in Charge, David Westall, that he was "dirty and shady," or words to that effect. S.A. 29.

On December 17, 2021, Mr. Bradbury sent an approximately eight-page email to twenty individuals, including supervisors and coworkers, after being told that he was not invited to an all-hands meeting being held at the Agency's Oklahoma City office. S.A. 62–70. The email became the basis of Specification 2. S.A. 29–30. Specification 2 alleges that Mr. Bradbury exercised poor judgment in sending an email to a large number of coworkers that included inappropriate remarks and disparaging comments about supervisors. S.A. 29–30. In the email, Mr. Bradbury "challenge[d] the rumor spreaders . . . to step up into the light . . . so that I can defend myself," and stated, "I actually have a few grinders in my garage that they may find helpful." S.A. 63.

On June 6, 2022, the Agency issued Mr. Bradbury a notice proposing to remove him for two reasons: (1) Conduct Unbecoming a Law Enforcement Officer, and (2) Failure to Follow Supervisory Instructions. S.A. 29–30. On September 22, 2022, the Agency issued a final decision sustaining the charge of Conduct Unbecoming a Law Enforcement Officer, while declining to sustain the charge of Failure to Follow Supervisory Instructions. S.A. 18–22. The Agency advised Mr. Bradbury that he was removed effective immediately. S.A. 20. The deciding official issued a *Douglas* Factors Review Form analyzing possible mitigating factors

under the framework set forth in *Douglas v. Veterans Administration*, 5 M.S.P.B. 313 (1981).  S.A. 23–28.  Analyzing the *Douglas* factors, the deciding official found the penalty of removal to promote the efficiency of the service. S.A. 28.

Mr. Bradbury appealed his removal to the Board. *Bradbury v. Dep't of Homeland Sec.*, No. DA-0752-23-0012-I-1, 2023 MSPB LEXIS 1100 (M.S.P.B. Feb. 27, 2023) ("*Initial Decision*").  In the proceedings, the administrative judge ("AJ") considered testimony from Mr. Bradbury and Agency witnesses, including Mr. Westall and Mr. Browning.  The AJ found that the Agency "proved by preponderant evidence [that Mr. Bradbury] engaged in conduct unbecoming a law enforcement officer," based on both Specifications 1 and 2, i.e., Mr. Bradbury's conduct at the October 20, 2021 meeting and in the December 17, 2021 email. *Id.* at \*13–20.  The AJ then found that the agency had established a nexus between its charges and the efficiency of the service, and that the penalty was reasonable and promoted the efficiency of the service.  *Id.* at \*20–27.  In its initial decision, the AJ affirmed the Agency's removal of Mr. Bradbury.  *Id.* at \*27.

Mr. Bradbury filed a petition for review with the Board, and in its final order, the full Board modified the AJ's initial decision to supplement the AJ's penalty analysis and otherwise affirmed the initial decision.  *Final Order*, 2024 MSPB LEXIS 4022, at ¶ 1.[2]

Mr. Bradbury timely petitioned this court for review. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

---

[2]    The final order is not included in the government's supplemental appendix.  We cite to the paragraphs as they sequentially appear in the final order.

## DISCUSSION

The scope of our review of Board decisions is limited by statute. We must affirm the Board's decision unless we find that it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). An agency decision is supported by substantial evidence if it is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). "[T]he Board's credibility determinations are virtually unreviewable on appeal." *Briley v. Nat'l Archives & Recs. Admin.*, 236 F.3d 1373, 1377 (Fed. Cir. 2001) (cleaned up).

I

Mr. Bradbury primarily contends that the Board erred in evaluating the facts by failing to properly weigh his evidence while favoring the Agency's evidence. Pet'r's Informal Br. 21 ("The full Board erred by not overturning the credibility determination of the Agency witnesses."). We are not persuaded.

Mr. Bradbury challenges the AJ's determination that Mr. Bradbury disregarded Mr. Westall's instructions in the October 20, 2021 meeting and "acted in a manner that reasonably caused other employees to fear for their safety and that of others." Pet'r's Informal Br. 8. As the Board concluded in its Final Order, the AJ at least implicitly made credibility determinations when she heard live witness testimony and found that preponderant evidence supports the Agency's account of events. *Initial Decision*, 2023 MSPB LEXIS 1100, at *15 (finding "after [Mr.] Westall told [Mr.] Bradbury] he needed to turn over his firearm, [Mr. Bradbury] quickly stood up and proceeded to remove his holstered firearm from his belt, disregarding [Mr.] Westall's instructions that he stop"). The AJ also found that each of

the Agency's witnesses credibly testified that they found Mr. Bradbury's actions "concerning." *Id.* at *15–16. The AJ cited Mr. Westall's testimony that Mr. Bradbury "gave off pre-assault indicators." *Id.* at *16.

Mr. Bradbury also argues that the objectionable conduct outlined in Specification 1 "centers on a claim that Mr. Bradbury disregarded instructions from [Mr.] Westall regarding how [Mr.] Westall would take Mr. Bradbury's holstered firearm." Pet'r's Informal Br. 3 (emphasis omitted). Mr. Bradbury argues that he could not have disregarded such instructions because he did not hear any clear instructions. While averring that he "does not seek to recharacterize the label of conduct unbecoming" into failure to follow instruction, Mr. Bradbury repeatedly alleges that the absence of instructions (or commands) by Mr. Westall negates the AJ's findings for Specification 1. *Id.* at 3–11; *see also* Informal Reply Br. 2.

Substantial evidence supports the Board's findings with respect to the events of the October 20, 2021 meeting. The AJ credited the testimony of Agency witnesses, including Mr. Westall, who described Mr. Bradbury's actions during that meeting as showing "pre-assault indicators." *Initial Decision*, 2023 MSPB LEXIS 1100, at *15–16. The AJ also considered Mr. Bradbury's state of mind, that he was allegedly "shook up" and "rattled," and found his claim that he did not hear any instructions to stop his actions did not undermine the Agency's credible evidence. *Id.* at *3–6; *see also id.* at *17 ("While I understand [Mr. Bradbury] was shaken by the circumstances, he disregarded [Mr.] Westall's instructions and acted in a manner that reasonably caused other employees to fear for their safety and that of others."). The AJ further noted discrepancies in Mr. Bradbury's account, including his denial of aggressive behavior while acknowledging that he stood up "immediately" and reached for his waist area. *Id.* at *5. The AJ found that under the circumstances, Mr. Westall's

perception of Mr. Bradbury's actions as aggressive was reasonable. *Id.*

Substantial evidence also supports the Board's findings with respect to the December 17, 2021 email. While the AJ credited Mr. Bradbury's explanation that his reference to "grinders" in his garage was not intended as a threat, he found the statement ambiguous and reflected poor judgment. *Id.* at *19–20. In any event, the AJ found Mr. Bradbury's disparaging remarks about management were unsuitable in the workplace. *Id.* at *17, *19–20. Mr. Bradbury attempts to downplay the effects of his conduct regarding the email, but he does not challenge the AJ's substantive findings as to Specification 2. Pet'r's Informal Br. 11–13.

In all, the AJ supplied multiple bases for her conclusions supporting the Agency's charge of Conduct Unbecoming a Law Enforcement Officer. *Initial Decision*, 2023 MSPB LEXIS 1100, at *13–20. The full Board found no reasons to overturn the AJ's determinations. *Final Order*, 2024 MSPB LEXIS 4022, at ¶ 2. We conclude that substantial evidence supports the Board's upholding of the charge of Conduct Unbecoming a Law Enforcement Officer based on Specifications 1 and 2.

## II

Mr. Bradbury further contends that "the penalty of removal is unreasonable, in light of the relevant *Douglas* factors." Pet'r's Informal Br. 13. Mr. Bradbury essentially asks us to reweigh the evidence under the *Douglas* factors to determine that the penalty imposed was not reasonable. *See, e.g.*, *id.* (arguing certain factors were "discount[ed]," i.e., should have been given more weight); *id.* at 15 (alleging the factor of rehabilitative potential was "ignored"). However, Mr. Bradbury fails to identify any information that should have been—but was not—considered by the Board, AJ, or deciding official.

As noted by the AJ, the deciding official performed a thorough and reasonable analysis under the *Douglas* factors. *Initial Decision*, 2023 MSPB LEXIS 1100, at \*21–23. The AJ noted that the "first and foremost" consideration is the "nature and seriousness of the misconduct," and concluded that the deciding official's "assessment of the seriousness of [Mr. Bradbury's] conduct was reasoned and supported by the record." *Id.* at \*22–25; S.A. 23–28. Echoing this, the Board observed that "conduct unbecoming is a serious charge" and also concluded that the aggravating factors in Mr. Bradbury's case outweighed the mitigating factors. *Final Order*, 2024 MSPB LEXIS 4022, at ¶ 8. The Board agreed with the AJ that Mr. Bradbury's lack of remorse with respect to the December 17, 2021 email "suggests that he is apt to repeat" such conduct. *Id.* ¶ 5. The Board also considered Mr. Bradbury's conduct, arising shortly after the June 14, 2021 letter of counseling, which suggested that any penalty less than removal would have questionable effectiveness. *Id.* ¶¶ 6–8.

In light of this record, we cannot conclude that the Agency's choice of penalty was "totally unwarranted in light of all the factors." *Brenner v. Dep't of Veterans Affs.*, 990 F.3d 1313, 1316–17 (Fed. Cir. 2021) (citation omitted). Therefore, we will not overturn the Agency's penalty determination.

## CONCLUSION

We have considered Mr. Bradbury's remaining arguments and find them unpersuasive. For the foregoing reasons, we affirm.

**AFFIRMED**

## COSTS

No costs.